**Sandra P. WALL, Plaintiff–Appellant,**

**v.**

**TRUST COMPANY OF GEORGIA, Defendant–Appellee.**

**No. 90–8511.**

United States Court of Appeals, Eleventh Circuit.

Nov. 5, 1991.

Nelson & Hill, P.A., Amy S. Gellins, Athens, Ga., for plaintiff-appellant.

Edward Katze, Constangy Brooks & Smith, Mitchell S. Allen, Atlanta, Ga., for defendant-appellee.

Before BIRCH, Circuit Judge, and DYER, Senior Circuit Judge, and FULLAM *, Senior District Judge.

DYER, Senior Circuit Judge:

Sandra P. Wall, a black employee of Trust Company Bank, sued her employer, alleging that she was denied a promotion based on discrimination on account of her race, in violation of 42 U.S.C. section 1981 and Title VII of the Civil Rights Act of

---

* Honorable John P. Fullam, Senior U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation.

1964, 42 U.S.C. section 2000e *et seq.* The district court granted partial summary judgment in favor of defendant on the section 1981 claim and entered judgment for the defendant on the Title VII claim after a bench trial. We agree that the nonpromotion of appellant Wall is not a cognizable claim under section 1981, and that the correct legal standard was applied by the court in denying Wall relief against her employer under Title VII. Accordingly, we affirm.

### FACTS

Sandra P. Wall worked for Trust Company Bank on a part-time basis from January 1980, and was employed full-time beginning in June 1984. She was a customer service representative in the cash management department. Wall received favorable evaluations of her job performance. The principal responsibilities of the customer service representative were to handle telephone calls and correspondence from customers, perform research, accounting and clerical functions, analyze banking errors for corrective action, and communicate verbally and in writing with customers, other financial institutions and other bank personnel. When a job notice was posted for a newly created position of tax analyst in her department, Wall sought the position. She submitted her resume to her supervisor, Octavia Brown. The principal responsibilities of the tax analyst were to prepare and file federal and state tax returns for customers, verify tax worksheets, research current tax laws and rulings, and dictate correspondence.

The department manager, Charles Sprayberry, had the ultimate hiring authority. He directed and worked with Brown in the selection process. Several current bank employees expressed an interest in the position. Of those who were interested in filling the vacancy, three were white and four were black. Wall was qualified and was Brown's choice. Sprayberry, in supervising Brown, advised her that the most qualified applicant should be selected, but he was also concerned that selecting a black person to fill the position could be perceived as reflecting preferential treatment towards blacks or maintaining segregated job classifications in their department. Sprayberry and Brown interviewed three final candidates, including a white male David Yoak, a recent college graduate who was not a current bank employee. Because Sprayberry had been given Yoak's resume by his superior manager at the bank, he believed at the time that there was no violation under the anti-nepotism policy of the closeness in relation to a bank employee. Sprayberry used a chart to rate and compare the qualifications of Yoak and Wall. He listed characteristics and skills, designating his evaluations by check marks and comments. Sprayberry selected Yoak as the tax analyst. Yoak was terminated after a short time due to the anti-nepotism policy of the bank.

Wall was perceived by Sprayberry as lacking enthusiasm and not sufficiently proficient in verbal communication skills to inspire customer confidence as a tax analyst. Wall received additional training in verbal communication skills in a "Speakeasy" course, paid for by the bank, in October 1986, following the denial of her promotion in May 1986. She was subsequently promoted twice: to operations support assistant in February 1987; and to weekend shift manager in November 1987. Wall is still employed with the bank.

### PROCEDURAL BACKGROUND

Wall filed this employment discrimination suit in August 1987 after exhausting the administrative procedures of the EEOC. Wall filed a demand for jury trial. Each party filed a motion for summary judgment on the Title VII claim. The motions were denied, as there were disputed material issues of fact. Wall contended that the bank intentionally discriminated against her on the basis of her race to maintain a "racial balance" in the affected department. The bank contended that it did not discriminate against Wall, and simply selected the applicant it deemed best qualified. The court granted the bank's motion for partial summary judgment on Wall's section 1981 claim filed before trial,

after receiving evidence in accordance with Fed.R.Civ.P. 43(e). The court found that Wall's promotion opportunity denied here did not rise to the level of a new and distinct contractual relationship, citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) and *Hishon v. King and Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Wall's Title VII claim was tried before the Magistrate as special master. The Magistrate's report and recommendation were adopted as the opinion of the district court.

## DISCUSSION

### 1. *Section 1981 Claim*

■ The first issue to be considered is whether defendant's motion for partial summary judgment should have been granted. Wall contends it was error as a matter of law for the trial court to hold that the promotion to tax analyst was not a "new and distinct contractual relationship," in accord with *Patterson v. McLean Credit Corp.*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). She also contends that the erroneous grant of defendant's motion for summary judgment deprived her of her right to trial by jury.[1]

*Patterson* clearly governs our analysis on the section 1981 issue. In *Patterson*, the Supreme Court clarified and restricted the contours of an actionable claim for discriminatory promotion under section 1981 to a "change in position [that] was such that it involved the opportunity to enter into a new contract with the employer." 491 U.S. at 185, 109 S.Ct. at 2377. Section 1981 provides in part:

> "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens...."

Guidance in interpreting this statutory language, provided by *Patterson* in dicta, is that the meaning of "the same right ... to make ... contracts" should not be "strain[ed] in an undue manner." *Id.* The Court did not resolve the question whether section 1981 applied to Patterson's failure to promote claim, since the defendant had never argued at any stage that section 1981 excluded such a claim. The Court stated in *Patterson* that "[o]nly where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under section 1981," citing *Hishon v. King and Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (refusal of law firm to accept associate into partnership) (Title VII). 491 U.S. at 185, 109 S.Ct. at 2377. Effectively, *Patterson* held that in the promotion context, a new contract is not *made* for purposes of section 1981 unless such a new and distinct relationship would flow from the promotion. *Bennun v. Rutgers State Univ.*, 941 F.2d 154 (3rd Cir.1991) (denying relief for non-promotion from tenured associate professor to full professor based on application of *Patterson* test).

We disagree with Wall that the promotion here rises above the bright line of a relation sufficiently "new and distinct" to qualify under the *Patterson* test. *See Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1519–20 (11th Cir.1991) (remanding to apply "new contract" test). The customer service representative and tax analyst positions are both nonexempt salaried jobs, are relatively equal in grade (118 versus 119), provide identical benefits and compensation, and are covered by the same policies and procedures. Specifically, the change would not have involved the elevation of Wall to a management position which could be considered a new contract, analogous to the change in status in *Hishon*, cited by means of example in *Patterson*. *See e.g., Harrison v. Associates Corp. of North America*, 917 F.2d 195, 198 (5th Cir.1990)

---

1. "When legal and equitable claims are joined in the same action, 'the right to jury trial on the legal claim, including all issues of fact common to both claims, remains intact.'" *Lytle v. House-*

*hold Manuf., Inc.*, 494 U.S. 545, 110 S.Ct. 1331, 1335, 108 L.Ed.2d 504 (1990) (citing *Curtis v. Loether*, 415 U.S. 189, 196 n. 11, 94 S.Ct. 1005, 1009 n. 11, 39 L.Ed.2d 260 (1974)).

(no change to general supervisory duties); *Mallory v. Booth Refrigeration Supply Co., Inc.,* 882 F.2d 908, 910 (4th Cir.1989) (promotion from clerk to supervisor satisfies test).

Since the trial court properly dismissed Wall's section 1981 claim, her equitable claim under Title VII was not entitled to a trial by jury. *Harrison, supra,* at 198; *Wilson v. City of Aliceville,* 779 F.2d 631 (11th Cir.1986).

### 2. *Title VII Burden of Proof*

The second issue is whether the trial court erred as a matter of law in its application of the burden of proof in a Title VII action. Wall contends that the special master correctly found that plaintiff presented *direct* evidence of racial discrimination, but erred as a matter of law in then applying the burden of proof for a *circumstantial* evidence case. Wall urges this court to determine under an "objective review of the evidence", rather than a review under the clearly erroneous standard, that defendant violated Title VII. She relies on the principle that this court is not bound by the clearly erroneous standard when "findings [are] made under an erroneous view of controlling legal principles." *Bigge v. Albertsons, Inc.,* 894 F.2d 1497, 1503 (11th Cir.1990) (citing *Harris v. Birmingham Bd. of Educ.,* 712 F.2d 1377, 1381 (11th Cir.1983)). We find, however, that the trial court properly evaluated the evidence in accordance with the order and allocation of proof in an employment discrimination action under Title VII. *See Wilson v. City of Aliceville,* 779 F.2d 631, 634 (11th Cir.1986) (direct evidence of discrimination); *See also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (circumstantial evidence of discrimination).

In reaching the conclusion that the defendant did not violate Title VII when it failed to promote plaintiff, the court found that Wall had established a *prima facie* case of discriminatory failure to promote by *both* direct and circumstantial evidence. The court found, based on Brown's testimo-

ny, that Sprayberry had, in fact, considered Wall's race.

■ When plaintiff establishes her *prima facie* case by direct evidence of intent to discriminate on account of race, defendant's burden to rebut that evidence is to prove by a preponderance of the evidence that it would have made the same employment decision in the absence of discriminatory motivation. *Hill v. Metro. Atlanta Rapid Transit Auth.,* 841 F.2d 1533, 1539 (11th Cir.1988); *Wilson, supra; Bell v. Birmingham Linen Service,* 715 F.2d 1552, 1556 (11th Cir.1983), *cert. denied,* 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984); *Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 774–76 (11th Cir.1982).

■ The *prima facie* case may also be established by circumstantial evidence in a failure to promote case. This requires the plaintiff to show that (1) she belongs to a racial minority; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected; and (4) after her rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d 668 (1973). The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection, which suffices at this stage to discharge the employer's burden of proof in rebuttal to meet the employee's *prima facie* case of discrimination. 411 U.S. at 803, 93 S.Ct. at 1825. However, the inquiry does not end there. To prove her case, the employee must demonstrate that the defendant's stated reason for her rejection was in fact pretext; *i.e.,* that the presumptively valid reason for her rejection was in fact a coverup for a racially discriminatory decision. *Id.* at 805, 93 S.Ct. at 1825.

■ The court noted that once a case is tried on the merits, the trial court is no longer concerned with whether the plaintiff made out a *prima facie* case, but, rather, the ultimate question may be addressed directly—whether the defendant intention-

ally discriminated against plaintiff. *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *Woody v. St. Clair County Commission*, 885 F.2d 1557, 1560 (11th Cir.1989); *Powers v. Ala. Dept. of Educ.*, 854 F.2d 1285, 1290 (11th Cir.1988), *cert. denied*, 490 U.S. 1107, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989). Whether the *prima facie* case was established by direct or circumstantial evidence determines what must be shown by the defendant to rebut plaintiff's initial evidentiary showing. *See Wilson*, 779 F.2d at 634 (more difficult for plaintiff with no direct evidence). However, the ultimate burden of persuading the trier of fact that defendant intentionally discriminated against plaintiff remains at all times with the plaintiff. *Watson v. Ft. Worth Bank & Trust*, 487 U.S. 977, 986, 108 S.Ct. 2777, 2784, 101 L.Ed.2d 827 (1988).

■ The court analyzed the evidence of both the hiring decision and pretext, based on the credibility of Sprayberry's testimony and what it found to be plaintiff's unconvincing proof on the ultimate question of discrimination. The totality of the evidence convinced the court that defendant would have made the same decision to hire Yoak rather than to promote Wall regardless of the admitted racial consideration initially expressed by Sprayberry to Brown as his concern about employee morale and perception of racial bias in the department.

In giving Wall the benefit of establishing by *direct* evidence that, *arguendo*, her lack of promotion was at least motivated in part because of her race, the court's finding regarding plaintiff's failure to prove pretext was not required. *See Wilson*, 779 F.2d at 634 (direct evidence of discrimination cannot be met by *McDonnell Douglas* rebuttal). Wall contends that the error of law was in shifting the burden to require her to prove pretext. In light of the articulated *alternative* nature of the trial court's findings, we disagree. The court's finding that Sprayberry chose the candidate he believed to be the best qualified, satisfied the defendant's burden under both standards: the heavier burden to convincingly rebut plaintiff's direct evidence and the presentation of a presumptively valid reason to rebut plaintiff's circumstantial evidence.

■ Where there is direct evidence, the court must find that the defendant would have reached the identical decision in the absence of any racial consideration. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). *See also Woody v. St. Clair County, supra; Hill v. MARTA, supra; Lee v. Russell County, supra; Perryman v. Johnson Products Co., Inc.*, 698 F.2d 1138, 1143 (11th Cir.1983).

■ Finding no error as a matter of law in the application of burden of proof, we are bound to review the findings of the district court under the clearly erroneous standard. *Bigge v. Albertsons, supra.* Acting as a substitute factfinder is not the role of this court. *See Anderson v. City of Bessemer*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985). Appellant argues that "the evidence compels the conclusion that defendant employed an invalid selection device in order to reject plaintiff for a position that she would have received if only she, like Yoak, had been white." We disagree. According to Sprayberry's testimony, Yoak's superior verbal communication skills weighed in his favor. The chart introduced as evidence also rated Yoak highly in the categories of "enthusiasm" and "potential." The record provides no support for Wall's argument that Sprayberry's emphasis on communication skills was delayed, contrived after the fact and in bad faith. Sprayberry was familiar with Wall's work, and his belief that her communication skills and analytical abilities necessary for the tax analyst position were not satisfactorily developed was found credible by the court. The findings of fact are not clearly erroneous.

AFFIRMED.