PUBLISH

IN THE UNITED STATED COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 94-6316

_____

D.C. Docket No. CV-92-AAR-1588-S

JERROLL RICHARDSON,

                    Plaintiff-Appellant,

versus

LEEDS POLICE DEPARTMENT; LEEDS, CITY OF,

                    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(December 15, 1995)

Before EDMONDSON and BIRCH, Circuit Judges, and HENDERSON, Senior
Circuit Judge.

PER CURIAM:

Jerroll Richardson, a former police officer for the City of Leeds, Alabama ("City"), appeals from the judgment of the United States District Court for the Northern District of Alabama dismissing this action alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981 and 42 U.S.C. § 1983. We reverse and remand for further proceedings.

## I.  STATEMENT OF THE CASE

Richardson, an African American, was an officer of the Leeds Police Department ("Department") from January 1989 until he resigned in May 1991. A short time after leaving the Department he changed his mind and sought reinstatement. His efforts were unsuccessful. On July 29, 1991, he filed an administrative complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that he resigned because of disparate treatment in job assignments during his period of employment. He also accused the Department of refusing to rehire him because of his race. After receiving a right to sue letter from the EEOC, Richardson commenced this action in the district court against the City and the Chief of Police, Thomas W. McDonald. He alleged in deposition testimony that his resignation amounted to a constructive discharge because it stemmed from the denial of opportunities for advancement while employed by the City, as well as racial slurs directed at him by a fellow officer and general hostility within the Department toward black citizens. He also claimed that he was not restored to his former position with the Department on account of his race and

2

because he complained that black citizens were treated more severely by the City's police officers than were white citizens. The complaint as amended included causes of action for alleged violations of Title VII of the Civil Rights Act of 1964 ("1964 Act"), § 1981 and § 1983.[1] He sought declaratory and injunctive relief, backpay, compensatory and punitive damages and reinstatement to the position he would have held absent the purported discrimination.[2]

---

[1]The petition did not specify the provision or provisions of Title VII relied upon by Richardson. Section 2000e-2(a)(1) of the 1964 Act, however, clearly applies to the allegations. It states:

> It shall be an unlawful employment practice for an employer--
>> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . .

Section 1981 bars racial discrimination in the making and enforcement of contracts. Richardson's cause of action under § 1983, which prohibits the deprivation of federal rights, privileges or immunities under color of state law, was based upon charges that the defendants violated his equal protection rights protected by the United States Constitution.

[2]The complaint also invoked the Civil Rights Act of 1991 ("1991 Act" or "Act"), which expanded the scope of § 1981 and provided for the recovery of compensatory and punitive damages for certain violations of Title VII, as well as the right to a jury trial when such damages are sought. The 1991 Act did not apply to the defendants' conduct alleged here, however, because it occurred prior to the Act's November 21, 1991 effective date. Landgraf v. USI Film Prods., 511 U.S. ___, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); Rivers v. Roadway Express, Inc., 511 U.S. ___, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994); Goldsmith v. City of Atmore, 996 F.2d 1155, 1159 (11th Cir. 1993). Consequently, under this court's precedent, which construed Title VII claims as equitable in nature, Richardson was not entitled to a jury trial on his Title VII cause of action. Lincoln v. Board of Regents of the Univ. Sys. of Ga.,

The City subsequently filed a motion for summary judgment on all charges against it. The district court granted the motion with respect to the claim for constructive discharge, finding that Richardson's reapplication for his old position foreclosed a conclusion that he resigned because of unbearable working conditions. See Morgan v. Ford, 6 F.3d 750, 755-56 (11th Cir. 1993) (employee who involuntarily resigns to escape illegal discrimination must prove that his employment situation was so intolerable that a reasonable person his position would have felt

697 F.2d 928, 934 (11th Cir.), cert. denied, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983). Nor was he permitted to seek Title VII compensatory or punitive damages. Walker v. Ford Motor Co., 684 F.2d 1355, 1364 (11th Cir. 1982). Moreover, Richardson's § 1981 allegations were governed by the pre-1991 Act rule of law announced in Patterson v. McLean Credit Union, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), in which the Court held that the reach of § 1981 was limited to discriminatory actions taken during the initial formation of a contract and conduct designed to impair the enforcement of contracts through the legal process. Id. at 179-80, 109 S.Ct. at 2374, 105 L.Ed.2d at 152. Accordingly, Richardson's complaints of constructive discharge and disparate treatment during the course of his employment were not actionable under that statute, but only under Title VII and § 1983. We need not decide whether Richardson's claim for failure to rehire was cognizable under § 1981 as interpreted by Patterson, see Wall v. Trust Co. of Ga., 946 F.2d 805, 808 (11th Cir. 1991) (test is whether a "new and distinct" relationship would be formed), because the procedures and relief available under that law, including the right to have a jury determine compensatory and punitive damages, are duplicative of those afforded by § 1983 when, as here, state actors are sued as defendants. See Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295, 301 (1975) (§ 1981 plaintiffs may seek both equitable and legal relief, including compensatory damages and, in limited circumstances, punitive damages); Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) (both compensatory and punitive damages are available under § 1983); but see City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616, 634-35 (1981) (punitive damages may not be assessed against municipalities). We therefore treat the complaint as alleging infractions of Title VII and § 1983.

4

compelled to leave), cert. denied, ____ U.S. ___, 114 S.Ct. 2708, 129 L.Ed.2d 836 (1994). The court denied summary judgment on all other claims. The court then, on July 23, 1993, entered final judgment for the City on the constructive discharge issue pursuant to Fed.R.Civ.P. 54(b).[3] Richardson did not appeal.

A jury trial on the § 1983 cause of action stemming from the alleged disparate treatment during the course of employment and in rehiring was held in 1994. At the conclusion of Richardson's case-in-chief, the defendants moved for judgment as a matter of law in compliance with Fed.R.Civ.P. 50. The district court denied the motions and continued with the trial. After the close of all the evidence, the defendants renewed their Rule 50 motions. The court took the motions under advisement and submitted the case to the jury, which was instructed to respond to a set of interrogatories as part of its deliberations. By its answers the jury exonerated McDonald of all alleged wrongdoing. It also found that the City did not discriminate against Richardson during his tenure with the Department. It could not reach a verdict, however, on the question of whether Richardson's race played a part in the City's refusal to rehire him. The district court announced that it would enter orders on the partial verdict and released the jury.

Thereafter, in a memorandum opinion, the court granted the City's motion for judgment as a matter of law on the reinstatement

---

[3] When more than one claim for relief is presented in an action, Rule 54(b) permits the entry of final judgment on a single count "upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

claim. In arriving at this decision, the court found that Richardson failed to prove a prima facie case of discrimination in the rehiring context because, unlike other white officers who were reemployed after they resigned, Richardson indicated when he left the Department that he was "burned out." The court consequently determined that Richardson was not similarly situated to the nonminority officers who were restored to their former positions. The court found further that, even assuming Richardson carried his initial burden of proof, he did not actually want the job for which he made application. In support of this finding the court relied on the jury's negative response to interrogatory number five, which inquired whether Richardson "presently" desired a position with the City as a police patrolman.[4] The court concluded that Richardson

---

[4]Richardson testified as follows:

> Q. Do you wish to go back to work for the City of Leeds as a police officer if you win this case?
> A. I'm afraid.
> Q. Afraid of what?
> A. I have put so many people in prison for drugs that it would be too easy for a while on the night shift or patrolling or an abandoned car stop for someone to shoot me. I'm not necessarily saying that it would be an individual that I had arrested. But when the investigation took place, then that, that is what would probably come out.
>
> . . . .
>
> Q. . . . you said you didn't think you wanted your job back, that you were afraid to go back?
> A. No, sir, that's not what I said. I did not say that I didn't want my job back. I still want my job back. I'm just afraid, and that fear is a fear that I did not have at the

6

could not prevail on the claim for reinstatement under any theory of recovery given this circumstance. The court found additionally that, to the extent that the evidence presented an issue of credibility, Richardson's admission that he resigned because he was "burned out" was a legitimate reason for declining to rehire him which was not pretextual.

Pursuant to the jury's partial verdict and the ruling on the motion for judgment as a matter of law, the district court dismissed the action in its entirety against both defendants. Richardson subsequently filed this appeal in which he challenges only the judgment rendered as a matter of law in favor of the City on the § 1983 and Title VII causes of action arising from the failure to restore him to his former position.

## II. DISCUSSION

We review a decision to grant a judgment as a matter of law de novo, applying the same standards utilized by the district court. Daniel v. City of Tampa, Fla., 38 F.3d 546, 549 (11th Cir. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 2557, 132 L.Ed.2d 811 (1995).

---

time that I went and asked to be rehired.
Q. You say that whatever that fear is, you still want your job back now?
A. After taking certain precautions, yes, sir.
Q. So that fear, whatever it is, was not so great that you don't want your job back now?
A. Sir?
Q. You want it back? You want to go back to work with the City of Leeds doing what you were doing?
A. I want to go back to work for the City of Leeds, yes, sir.

(R4 at 196-97, 325-26).

7

A judgment as a matter of law is warranted "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."  Fed.R.Civ.P. 50(a)(1).  When evaluating a Rule 50 motion, the court must consider all of the evidence and reasonable inferences arising therefrom in the light most favorable to the nonmoving party.  Beckwith v. City of Daytona Beach Shores, Fla., 58 F.3d 1554, 1560 (11th Cir. 1995).  A judgment as a matter of law may be affirmed only when "'the facts and inferences point so overwhelmingly in favor of the movant . . . that reasonable people could not arrive at a contrary verdict.'"  Pulte Home Corp. v. Osmose Wood Preserving, Inc., 60 F.3d 734, 739 (11th Cir. 1995) (quoting Roboserve, Ltd. v. Tom's Foods, Inc., 940 F.2d 1441, 1448 (11th Cir. 1991)).

In a case such as this alleging disparate treatment, in which § 1983 is employed as a remedy for the same conduct attacked under Title VII, "'the elements of the two causes of action are the same.'"  Cross v. State of Ala., 49 F.3d 1490, 1508 (11th Cir. 1995) (quoting Hardin v. Stynchcomb, 691 F.2d 1364, 1369 n.16 (11th Cir. 1982)).  In both instances, the plaintiff must prove that the defendant acted with discriminatory intent.  Hardin, 691 F.2d at 1369 n.16.

Identical methods of proof, as described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), are also employed.  See St. Mary's Honor Center v. Hicks, 509 U.S. ___, ___ n.1, 113 S.Ct. 2742, 2746 n.1, 125 L.Ed.2d 407, 415 n.1

8

(1993) (assuming that the McDonnell Douglas analysis applies equally to § 1983 and Title VII claims of discrimination). First, the plaintiff must establish a prima facie case, which raises a presumption that the employer's decision was more likely than not based upon an impermissible factor.[5] McDonnell Douglas Corp., 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677; Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207, 216 (1981). The defendant may rebut this presumption by articulating a legitimate, nondiscriminatory reason for its decision. McDonnell Douglas Corp., 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 678; Texas Dep't of Community Affairs, 450 U.S. at 254-55, 101 S.Ct. at 1094, 67 L.Ed.2d at 216. If the defendant meets this burden, the plaintiff must then have the opportunity to persuade the trier of fact, through the presentation of his own case and by cross-examining the defendant's witnesses, that the reason proffered was not the real basis for the decision, but a pretext for discrimination. McDonnell Douglas Corp., 411 U.S. at 804, 93 S.Ct. at 1825, 36 L.Ed.2d at 679; St. Mary's Honor Center, 509 U.S. at ___, 113 S.Ct. at 2747, 125 L.Ed.2d at 416.

---

[5]The proof required to establish a prima facie case will vary depending on the circumstances. McDonnell Douglas Corp., 411 U.S. at 802 n.13, 93 S.Ct. at 1824 n.13, 36 L.Ed.2d at 677 n.13. In McDonnell Douglas Corp., in which the plaintiff likewise alleged that his former employer refused to rehire him on account of his race, the Court stated that this initial burden may be satisfied with evidence that (1) the applicant belonged to a racial minority; (2) he applied and was qualified for the job; (3) he was rejected; and (4) after his rejection, the position remained open and the employer continued to seek qualified applicants. Id. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677.

The distinction between the Title VII and § 1983 causes in the present case was in the availability of a jury trial and compensatory damages under § 1983, but not with respect to the Title VII equitable claims, which were tried to the court. See supra note 2. When legal and equitable causes are joined in one action, the legal issues must be decided first. Dairy Queen, Inc. v. Wood, 369 U.S. 469, 479, 82 S.Ct. 894, 900-01, 8 L.Ed.2d 44, 52 (1962). To the extent that the elements of the two types of claims mirror one another, the jury's findings on the legal questions are binding in resolving the equitable issues. Lincoln v. Board of Regents of the Univ. Sys. of Ga., 697 F.2d 928, 934 (11th Cir.), cert. denied, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983).

Richardson argues on appeal that the district court erred by visiting whether he had established a prima facie case of discrimination after the action was fully tried on the merits, in violation of United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). We agree that it was wrong for the court to follow this procedure. In Aikens, the Supreme Court held that

> when the defendant fails to persuade the district court to dismiss the action for lack of a prima facie case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the factfinder must then decide whether the rejection was discriminatory within the meaning of Title VII.

Id. at 714-15, 103 S.Ct. at 1481, 75 L.Ed.2d at 410 (footnote omitted). When the trier of fact has before it all the evidence needed to decide the ultimate issue of whether the defendant

10

intentionally discriminated against the plaintiff, the question of whether the plaintiff properly made out a prima facie case "is no longer relevant." Id. at 715, 103 S.Ct. at 1482, 75 L.Ed.2d at 410; see also Wall v. Trust Co. of Georgia, 946 F.2d 805, 809-10 (11th Cir. 1991).

The district court's reliance on Richardson's statement that he was "burned out" to find that he failed to establish a prima facie case was substantively flawed as well. "The burden of establishing a prima facie case of disparate treatment is not onerous." Texas Dep't of Community Affairs, 450 U.S. at 253, 101 S.Ct. at 1094, 67 L.Ed.2d at 215; see also Howard v. BP Oil Co., Inc., 32 F.3d 520, 524 (11th Cir. 1994) (characterizing the requirements of demonstrating a prima facie case as "minimal"). To raise an inference of discrimination, it was not necessary for Richardson to show that he and the nonminority applicants who were rehired gave the same reason or reasons for resigning. Rather, it was sufficient for him to show that he belonged to a racial minority, that he applied for and was qualified for the job and that after his rejection, the position remained open and the Department continued to seek qualified applicants. See supra note 5.

The district court also decided that Richardson's admission of "burn out" was a legally acceptable ground for the City's decision, which was not pretextual. Richardson urges us to hold that the evidence relating to pretext was sufficient to create a jury

issue.[6]  After reviewing the trial transcript, we agree that the district court could have reached its conclusion only by improperly resolving conflicting inferences arising from the evidence in the light most favorable to the City.

The proof at the trial established that Richardson worked initially in the detective division as an undercover narcotics officer, which he understood would be a temporary assignment.  In April 1989, after the undercover detail ended, he was reassigned to patrol duty.  While working the 11:00 p.m. to 7:00 a.m. shift, he was required to testify during the day in court proceedings resulting from his prior undercover work.  During this time he was also "loaned" to several other police departments to assist in narcotics work conducted in nearby counties.  After certain conversations with McDonald, Richardson expected to be considered for the next available permanent position in the detective

---

[6]Richardson argues on appeal that Lynn Maxey, the City's mayor with whom the decision ultimately rested, never proffered Richardson's "burnout" as a reason for not rehiring him.  Maxey testified, however, that he was aware that Richardson complained of being "burned out" when he resigned.  (R6 at 674-75).  Although Maxey did not directly state that this influenced his decision, the jury could have inferred that it did.  Maxey cited additional reasons for not rehiring Richardson, chief among them that he already had someone else in mind for the position when Richardson expressed an interest.  Richardson maintains that the evidence reveals the existence of an issue of fact as to whether the other grounds given by the mayor were also pretextual.  The district court specifically declined to consider these various explanations, however (R2-96 at 4), and rested its judgment solely on its finding that Richardson was "burned out" (id. at 9).  We confine our review, therefore, to whether this particular motive cited by the district court must lead inexorably to a finding of no discrimination.  We also note that the City's contention on appeal that Richardson failed to demonstrate that the mayor was the final decisionmaker for purposes of municipal liability under § 1983 is without merit.

12

division, which McDonald indicated would be filled by someone from within the Department.  Instead, the next opening went to a white applicant from outside the Department.  Richardson remained in a patrol slot until his resignation.

Richardson testified that he left "basically due to the adverse treatment, the type of double standards.  I was, I was burnt out."  (R4 at 168).  He explained that

> between working narcotics, patrol, narcotics on loan, court time, and all of this running together, trying to perform my job the best that I could in patrol, that culminated with, at the time that the position was filled in the detective division, it was from outside and not from within.  Also when the DARE program came around, it was filled from the outside, not from within.
>
> When the subject that had went to the DARE program left, leaving a slot open again, and two hires were made and then the slot was filled by one of the hires coming in, it was just all culminating.  And at the time I felt that I was fighting a losing battle.

(Id. at 170).[7]  He stated further that he informed McDonald of the foregoing reasons when he submitted his letter of resignation.  (Id. at 183).  Later, after time for reflection, he decided that he wished to continue in his old job.  (Id. at 184-85).  After he was turned down by the mayor, he sought out and obtained other police work.  (Id. at 191-93).

There was also evidence that the mayor reinstated three white patrolmen after they had resigned.  McDonald testified that one of

---

[7]Richardson had expressed an interest in participating in DARE, which was a Department-sponsored drug awareness program for teenagers.

13

the officers left the Department because he was unhappy over the denial of a promotion. (R5 at 403). Another was dissatisfied with his pay and felt he had been treated unfairly with respect to a request for military leave. (Id. at 406-07, 416-17). The third was rehired despite a poor work record and an evident lack of interest in performing cooperatively with other members of the force. (Id. at 424-25).

The district court apparently believed that the evidence failed to create an issue of fact as to the decisionmaker's intent with respect to Richardson because it was undisputed that Richardson complained he was "burned out" when he left the Department. Although the evidence would have permitted a reasonable jury to infer an innocent motive on the City's part-- that the mayor viewed Richardson as a poor candidate for reemployment because he was "burned out" by police work and no longer inspired to perform to the best of his ability--a reasonable jury could also have concluded that Richardson's professed "burn out" was not the true reason he was not rehired. Like Richardson, two of the white officers who were rehired voiced dissatisfaction with their treatment within the Department. Richardson was arguably more qualified than the third reinstated patrolman. [8] Apart from Richardson's race, the evidence did not demonstrate any circumstances peculiar to his situation which set him apart from

---

[8]Although Richardson's record was not unblemished, he received commendations for his undercover work. In addition, McDonald recommended against rehiring the poorly qualified white officer, but did not oppose Richardson's reapplication.

14

the white officers who were restored to their jobs.[9]  In short, the evidence presented a question of fact as to whether the mayor's decision not to rehire Richardson was racially motivated.

As additional support for the judgment, the district court cited the jury's finding that Richardson did not "presently" desire to be reinstated.[10]  This factor, of course, could not have served as a rationale for the mayor's decision to reject Richardson's application in 1991, because it came to light for the first time during the trial in 1994.  The district court construed this circumstance, however, as interposing a complete obstacle to granting any type of relief.  In doing so the court confused the issue of liability with the type of warranted relief.

According to an "Amended Damage List" which was filed in support of the action, Richardson asked for backpay, reinstatement, declaratory and injunctive relief, costs and attorney's fees under Title VII.  In his § 1983 suit he sought compensation for "financial hardship, pain, suffering and mental anguish." (R2-49).  The jury's finding that, at the time of trial, Richardson no longer wanted his old job, may well have been relevant to fashioning a remedy in the event of the City's liability.  See Goldstein v. Manhattan Indus., Inc._, 758 F.2d 1435, 1448 (11th Cir.) (the

---

[9]In each case, the applicant sought to return to the same position he had vacated, a similar length of time elapsed between the officer's departure and his request to be rehired and the mayor made the final decision.

[10]We reject without discussion Richardson's assertion that the jury's finding was inconsistent with its deadlock on the issue of whether the City's refusal to rehire him was motivated by a discriminatory purpose.

decision of whether reinstatement should be ordered is within the sound discretion of the district court), <u>cert. denied</u>, 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985); <u>Carmichael v. Birmingham Saw Works</u>, 738 F.2d 1126, 1136 (11th Cir. 1984) (injunction ordering employer to refrain from discriminatory practices not justified where the plaintiff is not reinstated). But it would not have foreclosed a declaratory judgment that the City acted with bad intent, making it liable for backpay and compensatory damages. The district court's alternative reasoning for ordering judgment as a matter of law was therefore erroneous.

### III. CONCLUSION

The judgment rendered as a matter of law in favor of the City on Richardson's § 1983 and Title VII causes of action alleging he was not rehired on account of his race is hereby VACATED. The case is REMANDED to the district court for further proceedings consistent with this opinion.