Jewel R. JACKSON, etc., et al., Plaintiffs

v.

Fob JAMES, etc., et al., Defendants.

Civil Action No. 95–D–485–N.

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 16, 1996.

Terry G. Davis, Amardo W. Pitters; Solomon S. Seay, Jr., Montgomery, AL, for plaintiffs.

William H. Pryor, Jr., Office of Attorney General; Robert J. Russell, Dept. of Agric.;

William P. Gray, Jr., Legal Advisor to the Governor, Montgomery, AL, for defendants.

## MEMORANDUM OPINION

DE MENT, District Judge.

Plaintiffs Jewel R. Jackson and Vallie W. Durr, both black females and members of the Alabama Democratic Party, bring this class action lawsuit alleging that the defendants terminated their employment as county voter registrars in violation of their constitutional rights.[1] Specifically, the plaintiffs contend that they, along with members of their class, were discharged because of their political party affiliation in violation of their rights under the First Amendment pursuant to the Fourteenth Amendment of the United States Constitution, as enforced by 42 U.S.C. § 1983. Second, the plaintiffs contend that they, along with members of their class, were terminated because of their race in violation of their rights under the Fourteenth Amendment, as enforced by 42 U.S.C. § 1983. On behalf of themselves and the class members, the plaintiffs seek a declaratory judgment that the actions of the defendants were unconstitutional, mandatory injunctive relief, reinstatement, backpay and lost benefits, as well as attorney's fees, costs and interest.

The parties have stipulated to, and the court has certified, two classes of plaintiffs consisting of the following persons:

### [CLASS A]

"A class of all African–American persons who were members of county boards of registrars in the State of Alabama and who were terminated by defendants as county registrars."

and

### [CLASS B]

"A class of all Democrats or persons affiliated with the Democratic Party who were members of county boards of registrars in the State of Alabama and who were terminated by defendants as county registrars."

Rather than conducting a bench trial, the court allowed the parties to submit this case for a ruling based on the pleadings, depositions, affidavits, briefs, and exhibits, all of which the court has admitted into evidence. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court finds in favor of the plaintiffs and against the defendants on the plaintiffs' First Amendment claim. The court further finds in favor of the defendants and against the plaintiffs on all remaining claims. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the court hereby enters its Memorandum Opinion containing Findings of Fact and Conclusions of Law.

## JURISDICTION AND VENUE

Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 1983, as well as the First and Fourteenth Amendments to the United States Constitution. The parties do not contest personal jurisdiction or venue.

## STANDARD OF REVIEW

■ The burden of proof in civil cases is the same regardless of whether the finder of fact is a judge in a bench trial or a jury. *Cabrera v. Jakabovitz,* 24 F.3d 372, 380 (2d Cir.), *cert. denied,* 513 U.S. 876, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994). That is, a plaintiff bears the burden of satisfying the finder of fact that he or she has proven every element of his or her claim by a preponderance of the evidence. A preponderance of the evidence means such evidence as, when considered with that opposed to it, has more convincing force, and demonstrates that what is sought to be proved "is more likely true than not true." *See* Pattern Jury Instructions (Civil Cases) of the District Judges Assoc. of the Eleventh Circuit, Basic Instruction No. 6.1 (1990).

---

**1.** Plaintiffs Jackson and Durr are former registrars for Houston and Henry Counties, respectively. Defendants, who are the appointing authority for all county voter registrars throughout the State of Alabama, consist of the Governor, Fob James, the State Auditor, Pat Duncan, and the Commissioner of Agriculture and Industries, Jack Thompson.

In bench trials, the judge serves as the sole fact-finder and, thus, assumes the role of the jury. In this capacity, the judge's function includes weighing the evidence, evaluating the credibility of witnesses, and deciding questions of fact, as well as issues of law. *Childrey v. Bennett*, 997 F.2d 830, 834 (11th Cir.1993).

## FINDINGS OF FACT

Jewel R. Jackson and Vallie Durr are black females who are former members of the board of voter registrars for Houston and Henry counties, respectively. Their terms were scheduled to expire on September 30, 1995, as were the terms of all persons serving on county boards of voter registrars in Alabama. Appointments to these county boards of voter registrars are made by an appointing authority pursuant to *Alabama Code* § 17–4–150 (1975), which provides for a three-person board of voter registrars in each county, except Jefferson. The appointing authority is composed of the governor, the state auditor, and the state commissioner of agriculture and industries. Under *Alabama Code* § 17–4–151 (1975), a voter registrar's term of office extends for a period of four years.

According to the testimony of Anita Tatum, the director of voter registration for the State of Alabama, each county voter registrar begins his or her term of office on October 1 of the year following the election of state constitutional officers and members of the Alabama Legislature. *See* Ms. Tatum's Aff. at 1. Each voter registrar's four-year term then ends on September 30 of the year following the election of the constitutional officers and the members of the Legislature. *Id.* Ms. Tatum also noted that if a vacancy occurs, for any reason, on any board of registrars, a new appointee to that board serves only the remainder of the original appointee's term of four years. *Id.*

Fob James, Jr., Pat Duncan, and Jack Thompson were elected governor, auditor, and commissioner of agriculture and industries, respectively, by the voters of Alabama on November 8, 1994. Each one was inaugurated and took office on January 16, 1995. On February 8, 1995, all county registrars, including the plaintiffs, were notified by letter that their positions with their respective county board of registrars were to be terminated effective at the close of business, February 10, 1995. Defendant Duncan, acting on behalf of the appointing authority, thereupon mailed a letter to all of the chairpersons of county Republican organizations across the State asking for their input and recommendations for appointments to the various boards of registrars. Many of the responses from Republican chairpersons recommended persons who were characterized as being strong and loyal supporters of the Republican Party. Most of these recommended persons from the county chairs were subsequently appointed by the defendants as registrars. Recommendations were also received and accepted from other persons affiliated with the Republican Party. On the other hand, recommendations were not solicited by the defendants from any Democratic county chairpersons or organizations. However, the defendants did seek input from Secretary of State Jim Bennett and Speaker of the House James Clark along with some other state officials who are members of the Democratic Party.

The parties have stipulated that the defendants terminated the appointments of 153 county voter registrars, and that each termination was made on the basis of the registrar's political party affiliation.[2] Thus, the court finds that plaintiffs Jackson and Durr, along with the class of persons they represent [Class B] were all terminated by the defendants because of political patronage.

Regarding the plaintiffs' claim of race discrimination, the court notes that, prior to the defendants taking office, there were 197 county registrars in Alabama. Of these, 148, or 75.1%, were white and 49, or 24.9%, were black. Following the terminations of the class members by the defendants, 188, or 94%, of the registrars employed were white and 12, or 6%, were black. The plaintiffs note that the defendants, as the appointing

---

2. The parties have also entered a stipulation regarding the salary of each county registrar, with the exception of two registrars in Green County and one in Franklin County.

authority, met on several occasions prior to making their appointments of county registrars. During some of those meetings, according to defendant Jack Thompson, they discussed the race of several individuals. Furthermore, some of the responses from county chairs noted the race of black recommendations. There were also notations in the files of defendants of the race of some individuals under consideration. Nevertheless, the defendants deny that plaintiffs were terminated because of their race.

From this evidence, it is clear that the defendants were aware of the race of some individuals who were appointed as registrars. Nevertheless, the defendants note that the plaintiffs have offered no evidence that the defendants were knowledgeable of the race of any individual registrar who was terminated. Thus, the court finds that, with the exception of the statistical disparity before and after the termination of plaintiffs, any decision made based on race by the defendants was made only regarding those persons under consideration *for appointment* as registrars and not for sitting registrars *who were terminated.*

## DISCUSSION

### A. *Plaintiffs' Political Patronage Claim*

As noted above, the plaintiffs allege that they were terminated in violation of their rights under the First and Fourteenth Amendments to the United States Constitution, as enforced by 42 U.S.C. § 1983. Specifically, they contend that the defendants terminated their employment as county registrars because of their political party affiliation, *i.e.,* the fact that they are members of the Democratic Party. It is well-established that the government may not condition public employment on a basis that infringes upon an employee's constitutional rights. *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983).

Since 1976, the United States Supreme Court has steadily expanded First Amendment protection from adverse government action on the basis of partisan politics or political patronage. In *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Court held that several Republican non-civil service employees of a sheriff's office could not be discharged for political reasons when a Democrat was elected to replace a Republican sheriff. Similarly, in *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Court held that two county public defenders, both members of the Republican Party, could not be discharged solely because they were not affiliated with or sponsored by the Democratic Party. The Court noted that an employee could be terminated for his or her party affiliation only where the employee held a policymaking or confidential government position. *Id.; See also, Rutan v. Republican Party of Illinois,* 497 U.S. 62, 76, 110 S.Ct. 2729, 2737–38, 111 L.Ed.2d 52 (1990) (Extending *Branti* rule of impermissible infringements on First Amendment rights to include promotions, transfers, and recalls after layoffs based on political affiliation unless those employees hold a confidential government position).

Recently, the United States Supreme Court reaffirmed the prevailing law on political patronage which it first espoused in *Elrod* and *Branti.* In *O'Hare Truck Service, Inc., et al. v. City of Northlake, et al.,* —— U.S. ——, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996), the Court held that the government could not retaliate against a contractor who was a regular provider of services based on his political affiliation or his expression of political allegiance. Similarly, in *Board of Comm'rs, Wabaunsee County, Kansas v. Umbehr,* —— U.S. ——, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996), the Court held that the First Amendment protects an independent contractor from termination in retaliation for his criticism of the county and the its board of commissioners. Importantly, in each case the Court reaffirmed that the First Amendment proscribes political affiliation dismissals unless "the hiring authority can demonstrate that [political] party affiliation is an appropriate requirement for the effective performance of the public office involved." *O'Hare Truck Service,* —— U.S. at ——, 116 S.Ct. at 2354 (citations omitted); *see also, Umbehr,* —— U.S. at ——, 116 S.Ct. at 2347.

■ Defendants have maintained in this action that consideration of the party affiliation of plaintiffs and use of a patronage system are appropriate whether or not an employee is in a confidential position; however, the recent pronouncements from the United States Supreme Court re-emphasize that the defendants' position is untenable under the current state of the law.

As previously noted, the parties have entered a stipulation, and the court has found, that the plaintiffs were terminated by the defendants on the basis of political patronage. Furthermore, the defendants have offered no evidence that political patronage is an appropriate requirement for the effective performance of the plaintiffs' duties as county voter registrars. Thus, the court is constrained to find that the defendants' action in terminating plaintiffs violated plaintiffs' rights under the First and Fourteenth Amendments. Judgment is therefore due to be entered in favor of the plaintiffs and members of Class B on this claim.

The court must next address the relief due to the plaintiff class to remedy the defendants' violation of their First Amendment rights. The plaintiffs request that the court award them backpay for the time they would have served as registrars had they not been illegally discharged. They also request that they be reinstated to their positions as registrars.

■ Decisions of whether or not to grant relief in the form of backpay and reinstatement are matters left to the sound discretion of the trial court. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975); *see also Hearn v. General Electric Co.,* 927 F.Supp. 1486 (M.D.Ala.1996); *Goldstein v. Manhattan Indus., Inc.,* 758 F.2d 1435, 1448 (11th Cir.), *cert. denied,* 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985). In this case, each of the plaintiffs was prematurely terminated from his or her position as a voter registrar on February 10, 1995. Each of their terms had been scheduled to end on September 30, 1995. The court notes that the parties have stipulated as to the specific amount which is due to each plaintiff and class member as backpay for the time remaining on their respective terms. The court therefore finds that the amounts so stipulated shall be paid to each plaintiff and member of the plaintiff class [Class B] plus legal interest. *See* Joint Stipulation of Gross Backpay Amounts, filed July 25, 1996. The court further finds that because the terms of plaintiffs expired on September 30, 1995, and because the plaintiffs will be compensated with backpay for the balance of time of their terms, reinstatement is inappropriate and unnecessary under the circumstances of this case.

**B.** *Plaintiffs' Race Discrimination Claim*

The plaintiffs also allege race discrimination under 42 U.S.C. § 1983 pursuant to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. It is well-established that an employee may sue his or her public employer under 42 U.S.C. § 1983 when the violation rests on a claim of infringement of rights guaranteed by the United States Constitution. *Richardson v. Leeds Police Dept.,* 71 F.3d 801, 805 (11th Cir.1995); *Stallworth v. Shuler,* 777 F.2d 1431, 1433 (11th Cir.1985). The plaintiffs' ultimate burden of proof requires a showing, by a preponderance of the evidence, that the defendants "acted with discriminatory intent." *Richardson,* 71 F.3d at 805. In the instant case, the act which gives rise to the plaintiffs' race discrimination claim is their termination from employment as county voter registrars. Plaintiffs' race discrimination claim is premised upon a disparate treatment theory of liability.

■ In cases involving class actions, the Eleventh Circuit has held that "great uncertainty exists as to the precise elements of [a] prima facie case" of class-wide disparate treatment, *Perryman v. Johnson Products Co.,* 698 F.2d 1138, 1143 (11th Cir.1983); "the neat pattern of shifting inferences provided by *McDonnell Douglas [Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973),]* is not directly applicable to class actions." *Id.* Courts, therefore, avoid any "structural analysis" and consider "the evidence as a whole to determine whether the plaintiff class has established 'by a prepon-

derance of the evidence that ... discrimination was the [defendants'] standard operating procedure.'" *Id.* (quoting *Teamsters*, 431 U.S. at 336, 97 S.Ct. at 1854–55); *see also Griffin v. Carlin,* 755 F.2d 1516, 1525 (11th Cir.1985). As the Supreme Court stated in *International Brotherhood of Teamsters v. United States:*

> The importance of *McDonnell Douglas* lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII [or § 1983] plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act.

431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). Where the evidence is circumstantial, a plaintiff may establish intentional racial discrimination under a variation of the burden-shifting analysis set forth in *McDonnell Douglas* and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 518, 113 S.Ct. 2742, 2753, 125 L.Ed.2d 407 (1993).

The ultimate burden upon the plaintiff in any disparate treatment case is to convince the factfinder that the defendant's actions were discriminatorily motivated. Plaintiffs typically rely upon two kinds of circumstantial evidence to establish the existence of a policy, pattern, or practice of intentional discrimination: 1) statistical evidence aimed at establishing the defendant's treatment of the protected group, and 2) testimony from protected class members detailing specific instances of discrimination. *International Brotherhood of Teamsters,* 431 U.S. at 337–39, 97 S.Ct. at 1855–56. In some cases involving gross disparity, statistics alone may be sufficient to show a prima facie of racial discrimination. *Hazelwood School Dist. v. United States,* 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977).

■ Prior to the defendants taking office, there were 197 county registrars in Alabama. Of these, 148, or 75.1%, were white and 49, or 24.9%, were black. Following the termi-nations of plaintiffs by defendants 188, or 94%, of the registrars employed were white and 12, or 6%, were black. The court finds that this disparity is sufficient to make out a prima facie case of discrimination.

■ Because the plaintiffs have established a prima facie case of race discrimination, the burden now shifts to the defendants to articulate a legitimate non-discriminatory reason for their decision to terminate the plaintiffs' employment. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The defendants' burden is "exceedingly light," *Perryman v. Johnson Products Co., Inc.,* 698 F.2d 1138, 1142 (11th Cir.1983), as they "must merely proffer [race-neutral] reasons, not prove them." *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013, 1019 (11th Cir.1994). Nevertheless, the proffered reason for the employer's action must be reasonably specific and clear. *Burdine,* 450 U.S. at 258, 101 S.Ct. at 1096. The defendants contend that the plaintiffs were terminated for reasons of political patronage. Indeed, the plaintiffs and the defendants have entered into a stipulation that the reason for the plaintiffs' terminations were due to their political party affiliation. While defendants' proffered reason has resulted in an adverse ruling on plaintiffs' First Amendment claim, it is nevertheless a "non-discriminatory reason" for purposes of the plaintiffs' race claim, and satisfies their burden of production.

■ Because the defendants have satisfied their burden of production, the *McDonnell Douglas* framework, with its presumptions and burdens, drops out of the case, and the only question becomes "whether [the] plaintiffs have proven 'that the employer intentionally discriminated against' [them] because of [their] race." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). In other words, at this stage of the analysis, the plaintiffs' burden of establishing pretext merges with the plaintiffs' ultimate burden of proof of intentional discrimination. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. The court finds that the plaintiffs have failed to put forth any evidence of pretext. Accordingly, the court further finds that judgment is due

to be entered in favor of the defendants on the plaintiffs' race discrimination claim pursuant to 42 U.S.C. § 1983.

### C. *Plaintiff's Request for Injunctive and Declaratory Judgment Relief*

The plaintiffs also seek a declaratory judgment and injunctive relief. Specifically, the plaintiffs request that the court declare that the defendants' decision to fire them for reasons of political patronage in reliance upon *Alabama Code* § 17–4–151 was unconstitutional. They also seek a mandatory injunction ordering the defendants to reinstate the plaintiffs to their positions as voter registrars.

.Section 17–4–151 of the *Alabama Code* provides as follows:

> The registrars so appointed under this article may be removed at the will of the appointing board, or a majority of the members thereof, at any time, with or without cause, and without giving reasons therefor; and if not so removed, the registrars may hold office for four years from the time of their appointment and until their successors are appointed.

The parties have stipulated that the plaintiffs were dismissed for reasons of political patronage. In dismissing the plaintiffs, the defendants relied on the aforementioned statutory provision that the registrars could be fired at will; however, the court has found that the privilege of holding public office may not be denied by the state on the basis of political patronage when its actors violate federal constitutional guarantees. Thus, the court finds that, under the facts and circumstances of this case, *Alabama Code* § 17–4–151 (1975), *as interpreted and applied* by the defendants to remove the plaintiffs from their positions as voter registrars is unconstitutional because it violates the plaintiffs rights under the First Amendment. Consequently, the court finds that the plaintiffs' request for a declaratory judgment is due to be granted; however, because it has awarded backpay to the plaintiffs, the court finds that

an injunction is unnecessary for a just disposition of this case.

### D. *Attorney's Fees*

Finally, the plaintiffs seek attorneys fees from the defendants. Since they are the prevailing parties, the plaintiffs are entitled to attorneys fees under 42 U.S.C.A. § 1988, determined in accordance with *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974).

An appropriate judgment will be entered in accordance with the memorandum opinion.

### *JUDGMENT*

Pursuant to Rule 58 of the Federal Rules of Civil Procedure, and in accordance with and upon CONSIDERATION of the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECLARATION of the court:

(1) That pursuant to the First Amendment of the United States Constitution, as enforced by 42 U.S.C. § 1983, judgment be and the same is hereby ENTERED in favor of the plaintiffs and against the defendants on the plaintiffs' First Amendment claim;

(2) That all other claims against the defendants be and the same are hereby DISMISSED WITH PREJUDICE;

(3) That it is DECLARED that, under the facts and circumstances of this case, Alabama Code § 17–4–151 (1975), *as interpreted and applied* by the defendants to remove the plaintiffs from their positions as voter registrars, is unconstitutional because it violates the plaintiffs' guarantees under the First Amendment of the United States Constitution;

(4) That the plaintiffs be and the same are hereby DENIED reinstatement to their previous positions;

(5) That the plaintiffs are to have and recover from the defendants the amount of backpay to which the parties have stipulated plus legal interest;[1]

---

**1.** The parties have not yet entered a stipulation regarding the back pay due to two registrars in Greene County and one in Franklin County. The parties are ordered to submit such a stipulation to the court no later than September 15, 1996.

(6) That the plaintiffs are to have and recover from defendants reasonable attorney's fees;

(7) That the parties first should endeavor to stipulate to the appropriate amount of attorney's fees, subject to their right of appeal and the approval of this court; but if the parties cannot agree on reasonable attorney's fees, the plaintiffs are allowed twenty-eight days from the date of this order to file a motion, along with the appropriate supporting documentation, for the court to determine such fees;

(8) That costs be and the same are hereby taxed against the defendants and in favor of the plaintiffs, for which let execution issue, and that a bill of costs shall be submitted to the clerk of the court within twenty-eight days from the date of this order; and,

(9) That the court retains jurisdiction over this action to award reasonable attorney's fees and costs and to enter any other orders as may become necessary and appropriate.