PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
12/09/98
THOMAS  K. KAHN
CLERK

_____

No. 97-2577

_____

D. C. Docket No. 95-847-Civ-ORL-22

WILLIAM J. BOGLE,

Plaintiff-Appellant,

versus

ORANGE COUNTY BOARD OF COUNTY COMMISSIONERS
as governing body of Orange County, Florida,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(December 9, 1998)**

Before EDMONDSON and BIRCH, Circuit Judges, and STAFFORD[*], Senior District
Judge.

# BIRCH, Circuit Judge:

_____

[*] Honorable William Stafford, Senior U.S. District Judge for the Northern District
of Florida, sitting by designation.

In this appeal we review the standards for granting judgment as a matter of law in a case arising under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"), and to determine whether the district court properly awarded sanctions against Carol Swanson, the plaintiff-appellant's counsel, pursuant to Federal Rule of Civil Procedure 11 ("Rule 11"). We conclude that the district court properly entered judgment as a matter of law at the close of the plaintiff-appellant's case because he failed to introduce evidence that would have permitted a reasonable jury to disbelieve the defendant-appellee's reasons for the adverse employment action. We also conclude that we have no jurisdiction to entertain an appeal from the district court's sanctions order.

## BACKGROUND

On August 31, 1993, plaintiff-appellant, William Bogle, lost his job as a corrections officer at the Central Booking Facility in

Orange County, Florida.  Bogle had worked as a corrections officer for the defendant-appellee, the Orange County Board of County Commissioners ("Orange County"), since November 9, 1987, when it hired him at the age of fifty-eight.  Bogle was sixty-three and was the oldest male employee on his shift when Orange County terminated his employment.

Bogle's termination notice stated that Orange County discharged him for violating several policies and ethics rules that governed his conduct as a corrections officer.  Although Orange County had disciplined Bogle on a few occasions during the course of his employment, his performance reviews consistently reflected that he met expectations and his co-workers testified that he was a competent worker.  On June 26, 1993, however, Bogle's supervisors suspended him for throwing a chair at a door after his co-workers locked him out of a room.  Later, on July 30,

1993, Bogle's supervisors and a co-worker reported him for five separate violations of Orange County rules.[1]

Upon Bogle's termination, Robert Scanlon took his position on the day shift. Scanlon was approximately thirty years younger than Bogle. Bogle's theory of the case was that Sergeant Frank Walker, who became one of Bogle's supervisors in 1993, terminated Bogle because of his age and his desire to replace him with Scanlon, a significantly younger friend. Bogle also sought to show that his supervisors had disciplined him selectively to justify his termination and that other, younger employees were not disciplined for engaging in similar behavior.

After filing an age discrimination complaint with the Orlando Human Relations Department and the Equal Employment Opportunity Commission, Bogle filed this cause of action. Bogle's complaint alleges that Orange County terminated him because of his age in violation of the ADEA and Florida's Human Rights law,

---

[1] These write-ups were for tardiness, two violations of the smoking policy, using excessive force with an inmate, and entering a cell without another corrections officer.

Fla. Stat. 760.10. Before trial, the district court denied Orange County's motion for summary judgment, finding that material issues of fact remained in dispute. In particular, the district court found that the trier of fact would have to determine whether Bogle had been replaced by a younger employee and whether Orange County's stated reasons for terminating him were pretextual. See R2-54 at 2-3. At the close of Bogle's case in chief, however, the district court granted Orange County's motion for judgment as a matter of law. The district court found that Bogle had failed to present evidence to establish a prima facie case of age discrimination and, alternatively, that Bogle had failed to cast doubt on Orange County's stated reasons for firing him. See R5-103.

On April 10, 1997, three days after the district court entered judgment as a matter of law, Orange County filed a notice of its intent to seek Rule 11 sanctions. On May 5, 1997, Bogle filed a notice of appeal that designated all orders of the district court,

including the court's entry of final judgment, for consideration on appeal. Orange County filed its Rule 11 motion on May 8 and the district court granted the motion on July 1, 1997. The district court found that Swanson, Bogle's attorney, had violated Rule 11 by continuing to advance Bogle's age discrimination case after it became evident that his claims had no evidentiary support. The court also faulted Swanson's efforts to investigate Bogle's age discrimination claims and, in particular, her failure to depose Charles Perry, the Orange County employee who made the decision to terminate Bogle. As a sanction, the district court directed Swanson to complete twenty hours of continuing legal education on the subjects of federal employment discrimination law, office or case management, and federal trial or civil procedure. Bogle seeks to reverse the district court's entry of judgment as a matter of law and the imposition of Rule 11 sanctions against Swanson.

6

## DISCUSSION

## I.    Judgment as a Matter of Law

As noted above, the district court granted Orange County's motion for judgment as a matter of law at the close of Bogle's case.  Federal Rule of Civil Procedure 50 provides for judgment as a matter of law at the close of the plaintiff's case if the plaintiff has failed to present evidence that would permit a reasonable jury to find for the plaintiff.  See Fed. R. Civ. P. 50(a)(1).[2]  We review the district court's decision to grant judgment as a matter of law de novo and apply the same standards as the district court.  See Richardson v. Leeds Police Dep't, 71 F.3d 801, 805 (11th Cir. 1995).  In evaluating a defendant's Rule 50 motion, made at the close of the plaintiff's case, we must consider all the evidence in

---

[2]  Rule 50 provides in pertinent part:
If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against the party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.
Fed. R. Civ. P. 50(a)(1)

the light most favorable to the plaintiff and grant the plaintiff the benefit of all reasonable inferences. Id. Finally, we may affirm a judgment as a matter of law only if the facts and inferences "point so overwhelmingly in favor of the movant . . . that reasonable people could not arrive at a contrary verdict." Id. (citations and internal quotation omitted).

Since Bogle has presented no direct evidence that Orange County discharged him because of his age and relied, instead, on circumstantial evidence, the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 407 (1993), governs his ADEA case. See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 311, 116 S. Ct. 1307, 1310, 134 L. Ed. 2d 433 (1996) (assuming that the McDonnell Douglas framework applies to ADEA claims); Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998) (applying the McDonnell Douglas framework in an

ADEA case). Pursuant to this familiar framework, Bogle had to

establish a prima facie case of discrimination by showing:

> (1) that he was a member of the protected group of
> persons between the ages of forty and seventy; (2) that
> he was subject to adverse employment action; (3) that a
> substantially younger person filled the position . . . from
> which he was discharged; and (4) that he was qualified
> to do the job for which he was rejected.

Turlington, 135 F.3d at 1432 (citing Consolidated Coin, 517 U.S.

at 313, 116 S. Ct. at 1310). We note that Bogle presented

evidence that showed he was sixty-three years old when Orange

County fired him, that a man thirty years younger than Bogle

replaced him, and that Bogle received satisfactory performance

reviews for all the years he worked for Orange County. Although

the district court concluded that Bogle had not set forth a prima

facie case of age discrimination, we will assume that Bogle

presented sufficient evidence to carry his burden of production on

this phase of the case.[3]

---

[3] Despite the adherence of Bogle's evidence to the literal terms of the McDonnell Douglas test as applied in the ADEA context, the district court appears to have concluded that Bogle had not established a prima facie case because Orange County

Once Bogle made out his prima facie case of discrimination, Orange County had to respond with a legitimate, nondiscriminatory reason for its actions. See Turlington, 135 F.3d at 1432. Although the district court granted judgment as a matter of law before Orange County had the opportunity to present its case, it is clear that Orange County's stated legitimate, nondiscriminatory reason was before the district court in admissible form because Bogle introduced evidence regarding that reason during the presentation of his case.[4] Cf. Impact v.

replaced him pursuant to an age-blind seniority system. Under this system, Orange County internally advertised the opening created by Bogle's discharge and the applicant with the most seniority received the job. The district court noted that Bogle had presented no evidence that Perry, the actor responsible for Bogle's discharge, played any part in selecting his replacement or even knew who would have been next in line for Bogle's job, and concluded that it was merely a "coincidence" that the replacement was significantly younger than Bogle. See R5-103 at 2. We note that the district court arrived at its conclusion on this point without citation to authority and that Orange County also failed to identify any case support for the proposition that such an age-neutral replacement system necessarily precludes an ADEA plaintiff from making out a prima facie case. As Orange County's counsel conceded at oral argument, however, if the decision-maker knows that the replacement necessarily will be significantly younger (i.e. because every possible replacement happens to be younger) a discharged employee would still be able to make out a prima facie case. Nevertheless, since we conclude, on alternative grounds, that the district court properly entered judgment against Bogle, we assume that Bogle made out his prima facie case and will not consider the issue further.

[4] Bogle correctly observes that once he set forth his prima facie case for age discrimination he enjoyed a presumption of unlawful discrimination. See Combs v.

Firestone, 893 F.2d 1189, 1193 (11th Cir. 1990) (noting that the

defendant must introduce legitimate, nondiscriminatory reasons

for its actions in the form of admissible evidence) (quoting

Burdine, 450 U.S. at 254-55, 101 S. Ct. at 1095).   During the

presentation of his case-in-chief, Bogle introduced into evidence a

letter from Orange County that notified Bogle both of his dismissal

and the reason for that dismissal.  The letter lists several previous

disciplinary problems and Bogle's violation of a number of policies

and procedures as the grounds for his termination.  The letter,

therefore, established Orange County's position that it fired Bogle

because of excessive disciplinary problems.[5]   Indeed, Bogle

Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997), cert. denied -- U.S. –, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981)).  Without any evidence to rebut this presumption, Orange County would not have been entitled to judgment as a matter of law. Id.  Bogle, however, presented Orange County's reason for his termination by introducing the discharge letter and then attempted to cast doubt on that legitimate, nondiscriminatory reason. Given Bogle's introduction of this evidence, his failure to present evidence from which a reasonable jury could find pretext permitted Orange County to move for, and the court to grant, judgment as a matter of law at the close of Bogle's case.

   [5] As we explained in Combs, the level of generality at which the parties and the court conceptualize the defendant's legitimate, non-discriminatory reasons for the discharge can be significant, particularly when the plaintiff attempts to demonstrate that the reasons are pretextual.  See Combs, 106 F.3d at 1534-35.  In this case, Orange

11

devoted the majority of his efforts at trial to an attempt to demonstrate that this justification was pretextual and that he had been the victim of selective discipline.

Once Bogle introduced Orange County's legitimate nondiscriminatory reason for his discharge, the initial presumption of discrimination accompanying the prima facie case dissolved, and the McDonnell Douglas framework required Bogle to demonstrate that the stated reason was pretextual. Combs, 106 F.3d at 1528. As the district court noted, we reviewed the application of this framework and the standards for granting judgment as a matter of law in employment discrimination cases extensively in Combs. In that case, we noted that a plaintiff could establish pretext indirectly "by showing that the employer's proffered explanation is unworthy of credence." Id. (quoting Burdine, 450 U.S. at 256, 101 S. Ct. at 1095). We then conducted an exhaustive review of when the law in this area

County maintained that the cumulation of disciplinary violations led to Bogle's dismissal rather than any one event.

12

precludes the entry of judgment as a matter of law and concluded that in this circuit, as well as in eight others: "[O]nce a plaintiff has . . . put on sufficient evidence to allow a factfinder to disbelieve an employer's proffered explanation for its actions, that alone is enough to preclude entry of judgment as a matter of law." Id. at 1532, 1535.[6] Once the plaintiff carries this burden, it is up to the jury either to accept or reject the inference that the falsity of the employer's reasons for the discharge supports a finding of discrimination: "That decision is entrusted to the jury's discretion, but to exercise that discretion, the jury has to get the case." Id. at 1538. Accordingly, Orange County was not entitled to judgment as a matter of law if Bogle produced any evidence that would

---

[6] The Combs panel expressly rejected the suggestion, that had appeared in at least two of our prior decisions, that a defendant could succeed on a motion for summary judgment or a motion for judgment as a matter of law even though the plaintiff had plausibly discredited the defendant's proffered legitimate, nondiscriminatory reasons. Id. at 1533-35. Instead, in Combs we concluded that the decisions of the Supreme Court and our own circuit required the submission of a circumstantial case of discrimination to the jury as long as the plaintiff presents a prima facie case as well as plausible evidence that would permit a jury to disbelieve the employer's stated legitimate, nondiscriminatory reasons. Id. at 1538.

permit a reasonable jury to disbelieve the proffered reasons for his discharge.[7]

Bogle attempted to cast doubt on Orange County's stated reasons for his discharge by introducing evidence that his supervisors had singled him out for selective discipline and that, although Bogle formally may have violated a variety of procedures, the discipline he received in connection with those violations and his dismissal for the cumulation of incidents was grossly disproportionate to the treatment other employees received. In particular, Bogle sought to establish that his receipt of five separate written reprimands in one day was unusual and thereby create an inference of selective discipline. As the discussion above makes clear, had Bogle successfully presented

---

[7] We note that although the standard for granting a motion for summary judgment and a motion for judgment as a matter of law are precisely the same in an employment discrimination case, see Combs, 106 F.3d at 1533 n.8, the district court in this case denied Orange County's motion for summary judgment but granted the motion for judgment as a matter of law. The only situation in which this discord seems possible is when the non-movant's evidence, when presented at trial, does not live up to its promise at the summary judgment stage. This could result from the non-movant's carelessness or mistake at trial. We note our deference to the explanation of this point in Combs only to avoid the potential for further confusion on this issue.

evidence in support of such an inference, Combs would preclude judgment as a matter of law. Our review of the record, however, reveals that, during three days of trial, Bogle failed to carry his burden to produce evidence that would cast doubt on Orange County's decisions to discipline and terminate him.

Bogle attempted to demonstrate that a number of other Orange County employees who had lost their jobs had engaged in conduct that was far more egregious than his. He also sought to show that other Orange County employees had violated the smoking policy and engaged in similar types of horseplay but received no discipline at all. Bogle's evidence in this respect, however, consisted of unverifiable, anecdotal testimony from his co-workers and from his own experience regarding isolated incidents and Orange County's alleged disciplinary response. This evidence could not support a reasonable jury finding that Orange County had singled Bogle out for unusually harsh treatment. The witnesses who testified regarding these other

incidents had no personal knowledge of how Orange County had disciplined the employees in question and no knowledge regarding the disciplinary histories of those employees. Moreover, in several instances the testimony amounted to nothing more than an allegation that a particular employee had broken a rule but had never been caught and, therefore, never been disciplined. This testimony thus failed to provide any comparison to similarly situated but significantly younger employees who might have been treated less severely.[8]

Bogle also failed to call a single witness who could testify authoritatively and comprehensively regarding Orange County's

---

[8] This is not to say that stronger anecdotal evidence might not, in some cases, be enough to cast sufficient doubt on the defendant's stated reasons for the adverse employment action. Cf. Ross v. Rhodes Furniture, Inc., No. 97-6729, (11th Cir. July 20, 1998) (evidence that showed the decision maker engaged in the same policy violation given to support the plaintiff's termination was sufficient to preclude judgment as a matter of law). In the present case, however, Bogle's evidence was too tenuous and speculative to reasonably support an inference of selective discipline.

disciplinary policies, particularly as to what violations of policy Orange County considered serious and when the cumulation of incidents would lead to an employee's termination. Bogle's efforts to present a comparison between his own record and those of other Orange County employees were limited to his attempt to elicit such a comparison from Jacqueline Miller, an Orange County employee who reviewed Bogle's file after he made his age discrimination complaint. Indeed, Miller testified that she thought Bogle's file was unusual in some respects. See Supp. R2 at 190 & 202 (admitting that she had never reviewed a file in which the employee had been written up twice in one day for smoking or had received four separate infractions of any kind in one day). Miller's experience, however, was limited to reviewing the files of those employees who alleged some form of employment discrimination. Her experience, therefore, could not provide a reliably comprehensive sample against which to compare Bogle's treatment.

Finally, Bogle failed to call Perry, the actual decision maker in this case, to testify regarding his evaluation of Bogle's record and how it would have compared to other Orange County's decisions with respect to younger employees. Bogle defends his failure to call Perry during his case and argues that he should not be put to the task of putting forth the defendant's case. That much is true, but in order to survive a defendant's motion for judgment as a matter of law, offered at the conclusion of the plaintiff's case, the plaintiff must present evidence that would permit a reasonable jury to find in the plaintiff's favor on each and every element of the claim. See Fed. R. Civ. P. 50(a)(1); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986) (noting that the standard for a directed verdict and summary judgment are the same and that the absence of evidence on an essential element of a party's case will support judgment as a matter of law against that party); Reeves v. City of Jackson, 532 F.2d 491, 494 (5th Cir. 1976) ("If, after a full

18

development of the facts the plaintiff's cause is too weak to string the Constitution's bow or unsheath the sword provided for the redress of such grievances . . . it may be washed out on summary judgment . . . or, if it gets beyond that, by motion for directed verdict . . . at the end of the plaintiff's case . . . .") To survive Orange County's motion, therefore, Bogle had to call a witness or present other competent evidence that could have cast doubt on Orange County's stated reason for his termination—a reason that Bogle, himself, introduced into evidence. Since Bogle failed to meet this burden, the district court correctly entered judgment as a matter of law against him.[9]

---

[9] Our conclusion on this matter precludes any need to address Bogle's remaining arguments concerning his state law claims of age discrimination. See generally Florida Dep't of Comm. Affairs v. Bryant, 586 So.2d 1205, 1209 (Fla. Dist. Ct. App. 1991) (applying the McDonnell Douglas framework to discrimination claims under Florida law and noting that since Florida's Human Rights law is modeled after federal law, federal case law interpreting discrimination claims applies).

## II.    Rule 11 Sanctions

As noted above, the district court entered judgment as a matter of law against Bogle on April 7, 1997.  Bogle filed a timely notice of appeal on May 5, 1997, which stated that Bogle intended to pursue an appeal from the order.  Thereafter, Orange County filed a motion for attorneys' fees pursuant to 42 U.S.C. § 1988 and sanctions pursuant to Federal Rule of Civil Procedure 11 ("Rule 11").  On June 30, 1997, the district court found that Bogle's attorney, Swanson, had forced a trial regarding intentional age discrimination even though she reasonably should have known Bogle's claim had no evidentiary support and granted Orange County's motion for Rule 11 sanctions.[10]  Significantly, Swanson did not file another notice of appeal or amend the previous notice of appeal within thirty days of the district court's Rule 11 order.  Nevertheless, Swanson has included arguments

_____

[10]  The district also court concluded that Orange County could not recover attorneys' fees for prevailing in an age discrimination case.  Orange County has not contested this point on appeal.

20

regarding the Rule 11 order in her briefs before this court and asks us to reverse the district court's imposition of sanctions.

Orange County argues that we are without jurisdiction to consider Swanson's arguments regarding the Rule 11 order because Swanson never filed a notice of appeal stating her intent to appeal the sanctions.  Federal Rule of Appellate Procedure 4 ("FRAP 4") requires a civil litigant who makes an appeal as of right to file a notice of appeal within thirty days after the date that the district court entered its order.  See Fed. R. App. P. 4(a)(1). As the Supreme Court has explained, filing a timely notice of appeal is "mandatory and jurisdictional"; without it a Court of Appeals is "without jurisdiction to review the decision on the merits."  Budinich v. Becton Dickinson & Co., 486 U.S. 196, 203, 108 S. Ct. 1717, 1722, 100  L. Ed. 2d 178 (1988).        Federal Rule of Appellate Procedure 3 ("FRAP 3") governs the required contents of a notice of appeal and demands that the notice "designate the judgment, order, or part thereof appealed from . . .

." Fed. R. App. P. 3(c). In <u>McDougald v. Jenson</u>, 786 F.2d 1465, 1474 (11th Cir. 1986), we held that a litigant who filed a notice of appeal prior to the entry of the relevant order without referring to that order had failed to satisfy FRAP 3. We also held that because the litigant had failed to file an additional or amended notice of appeal referring to the subsequent order, the Court of Appeals was without jurisdiction to hear the appeal on the merits. <u>Id.</u>

In its entirety, the notice of appeal in this case states as follows: "Notice is given that WILLIAM J. BOGLE, Plaintiff/Appellant, appeals to the United States Eleventh Circuit Court of Appeal all Orders of this Court, including the Final Judgment rendered on April 7, 1997, a copy of which is attached hereto as Exhibit 'A'." This notice of appeal was filed three days before Orange County filed its Rule 11 motion for sanctions and almost two months before the district judge entered her order awarding sanctions against Bogle's counsel.

Federal Rule of Appellate Procedure 3(c) provides that "[a] notice of appeal must specify the party or parties taking the appeal by naming each appellant in either the caption or the body of the notice of appeal." Rule 3(c) also provides that "an appeal will not be dismissed...for failure to name a party whose intent to appeal is otherwise clear from the notice." The test for determining the sufficiency of a notice of appeal is "whether it is objectively clear that a party intended to appeal." Fed. R. App. P. 3(c) advisory committee's note (1993 amendment).

In this case, it must be remembered that sanctions were not imposed against Bogle. Instead, the district judge sanctioned Bogle's counsel. Yet there is nothing in Bogle's notice of appeal to suggest that counsel joins her client as an appellant. To be sure, counsel's name appears on the notice of appeal where she signed the notice as Bogle's attorney. Her name is not mentioned, however, in either the caption or the body of the notice

of appeal.   In both the caption and the body, the notice refers only to "WILLIAM J. BOGLE, Plaintiff/Appellant."

At least three circuit courts have determined that no appellate jurisdiction exists over an appeal of a district court's award of sanctions against counsel where the notice of appeal fails to make clear that counsel intends to participate as an appellant rather than as an appellant's attorney.  Maerki v. Wilson, 128 F.3d 1005 (6th Cir. 1997); Agee v. Paramount Communications, Inc., 114 F.3d 395 (2d Cir. 1997); Dietrich v. Sun Exploration and Prod. Co., Nos. 92-1981, 93-1442,  (6th Cir. Mar. 30, 1994), cert. denied, 513 U.S. 1872, 115 S. Ct. 197, 130 L.Ed.2d 128 (1994).  Because there is nothing in Bogle's notice of appeal to suggest that counsel intended to participate in her own right as a party appellant, we are without jurisdiction to entertain counsel's appeal from the imposition of sanctions.

Furthermore, even if it were clear that counsel intended to participate as an additional appellant, the notice of appeal in this

case does not confer jurisdiction over a sanctions order that was entered almost two months after the notice of appeal was filed. Indeed, at the time the notice of appeal was filed, neither Bogle nor his counsel could be certain that Orange County, as the prevailing defendant, would follow through with its earlier-filed notice of intent to seek sanctions. Nor could either know that the district judge would ultimately award sanctions as she did. It may be true that the subsequent Rule 11 order was (or should have been) within counsel's contemplation. It would not have been unreasonable, however, for Bogle and his counsel to believe that Orange County, having won its case, would choose not to further litigate the matter of sanctions. Moreover, to the extent that sanctions should have been within counsel's contemplation, perhaps counsel should also have contemplated that the district judge had no authority to grant a post-judgment Rule 11 motion.

That an order imposing sanctions may have been contemplated does not change the fact that, at the time the notice

of appeal was filed, a decision regarding sanctions had not yet been announced and sanctions had not yet been imposed. Rule 3(c) provides that a "notice of appeal...must designate the judgment, order, or part thereof appealed from." Although notices of appeal are to be given expansive rather than hypertechnical construction, Rule 3(c) requires that a notice of appeal designate an existent judgment or order, not one that is merely expected or that is, or should be, within the appellant's contemplation when the notice of appeal is filed. See 20 James Wm. Moore, Moore's Federal Practice § 303.21[3][c] (explaining that a notice of appeal does not ordinarily include orders that have not been entered at the time a notice of appeal is filed and that, for post-notice orders, a second notice or appeal, or an amended notice of appeal, is usually necessary).

The Ninth Circuit has held that even where a notice of appeal does not designate a post-judgment order, appellate jurisdiction may nevertheless exist over a post-judgment order if

the appellant's brief raises the post-judgment issue <u>and</u> the brief is filed before the deadline for filing a notice of appeal from the post-judgment order has expired. <u>Intel Corp. v. Terabyte Int'l, Inc.</u>, 6 F.3d 614 (9th Cir. 1993). The Ninth Circuit concluded in <u>Terabyte</u> that appellant's opening brief served as a timely-filed notice of appeal of the district court's post-judgment (and post-notice) order setting the amount of attorney's fees.

In this case, the notice of appeal did not, and could not, designate the district judge's order imposing sanctions because no such order had than been entered. Furthermore, Bogle's brief on appeal was not filed until January 20, 1998, more than six months after the district judge entered the order imposing sanctions. Assuming that an appellate brief may serve as a notice of appeal, Bogle's brief was filed long after expiration of the time to file an appeal of the sanctions order. In the absence of a timely notice of appeal following entry of the district judge's

sanction order, we are without jurisdiction to consider an appeal of that order.

## CONCLUSION

Bogle asks us to reverse the district court's decision to enter judgment as a matter of law at the close of his case-in-chief and its decision to impose sanctions pursuant to Rule 11. Although we assume that Bogle's evidence was sufficient to present a prima facie case of age discrimination under the McDonnell Douglas regime as it applies in ADEA cases, we hold that Bogle failed to present evidence that could lead a reasonable jury to disbelieve Orange County's stated reasons for his discharge and therefore make an inference of illegal discrimination. As a result, we affirm the district court's entry of judgment as a matter of law.

We also conclude that Bogle's notice of appeal, filed before the entry of the district court's order sanctioning Swanson for violating Rule 11, was insufficient to designate the order for

consideration on appeal and, therefore, hold that we do not have jurisdiction to review the sanctions.

We AFFIRM the district court's entry of judgment as a matter of law on the merits of the case.  The appeal from the district court's order imposing sanction is DISMISSED FOR LACK OF JURISDICTION.