Howard V. SLICKER, Jr., Plaintiff-Appellant,

v.

JACKSON, Officer, Fulmer, Officer, et al., individually and in their official capacities as police officers for the Summerville Police Department, Defendants-Appellees,

No. 99-10592.

United States Court of Appeals,

Eleventh Circuit.

June 21, 2000.

Appeal from the United States District Court for the Northern District of Georgia. (No. 97-00148-4-RLV), Robert L. Vining, Jr., Judge.

Before TJOFLAT, MARCUS and KRAVITCH, Circuit Judges.

MARCUS, Circuit Judge:

This is an appeal of a district court order granting judgment as a matter of law in favor of defendants, Officers Clifford D. Jackson, Roger T. Fulmer, and Thomas H. Kendricks, of the Summerville, Georgia Police Department, at the close of plaintiff Howard V. Slicker, Jr.'s civil rights case prosecuted under 42 U.S.C. § 1983. In essence, Slicker alleged that the officers violated his rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution by subjecting him to an unlawful seizure when they placed him under arrest and by using excessive force in the process of arresting him. The central issue on appeal is whether the district court erred in entering judgment as a matter of law on the grounds that Slicker failed to produce evidence that he suffered a monetary loss as a result of the officers' conduct.[1] Because a § 1983 plaintiff alleging excessive force may receive compensatory damages for such things as physical pain and suffering and mental and emotional anguish, and because a § 1983 plaintiff whose constitutional rights are violated is entitled to receive nominal damages even if he fails to produce any evidence of compensatory

---

[1]The district court granted the officers' motion for judgment as a matter of law on Slicker's unlawful arrest claim on the grounds that they were entitled to qualified immunity because the officers had probable cause to arrest Slicker. Slicker does not appeal this ruling.

damages, we hold that the district court erred in granting judgment as a matter of law, we vacate the judgment, and remand for further proceedings consistent with this opinion.

I.

The procedural history and relevant facts are straightforward. Slicker brought suit against the officers based on an incident that occurred on August 2, 1995. On this date, Slicker accompanied his friend, Patricia Snead Montgomery, to the Summerville Police Department to inquire as to why Ray Teague, against whom Montgomery had filed a criminal complaint, alleging he had illegally entered her home, had been released on bond. At trial, Slicker testified that Officer Jackson refused to tell him why Teague had been released. He also testified that as he was leaving the police station building, Officer Kendricks arrested him for disorderly conduct, at which time the officers slammed his head against the pavement and knocked him unconscious. Specifically, he testified in these words:

> A: I was leaving the city building, the police station and Kendricks said I was under arrest for disorderly conduct.
>
> Q: Then what happened?
>
> A: He put the handcuffs on my arm and tried to put my arm over my head which I can't do. I was like let me put them behind my back. And he grabbed ahold of my head and Fulmer had the cuffs on my hands and he put it behind my back and Kendricks grabbed ahold of the top of my head up here and slammed my head in the pavement.
>
> ....
>
> Q: What happened next?
>
> A: They hit my head on the pavement and I was out. Then I came to, felt like I was in la-la land and I felt two blows to the top of my head. I was worrying about please don't hurt my neck and Kendricks said this is tough shit.
>
> ....
>
> Q: After you were down on the ground, what happened next?
>
> A: My hands were cuffed and they picked me up, laid me on the hood of the car and I was having problems I couldn't feel my arms. So I slid off to the side of the car so it would relax the back of my neck and that's where I laid handcuffed facing up.

**2**

Q: Were you kicked?

A: I was kicked in the leg and kicked in the back and I ended up—kicked in the back of the head too because I had too [sic] big large knots.

Q: Were you still in handcuffs?

A: Yes, sir.

Q: When were you first placed in handcuffs?

A: When he said I was arrested for disorderly conduct.

Q: Did the handcuffs ever come off you during the time they were beating you?

A: No, sir.

Slicker said that after the officers dragged him inside the police station and took off his handcuffs, he was treated at a hospital emergency room, although he did not offer into evidence any medical bills. He also testified that he sought medical treatment after he left the emergency room. Slicker did not claim that he missed work or that he incurred any other direct monetary loss as a result of the officers' conduct.

Ms. Patricia Snead Montgomery's trial testimony amplified the plaintiff's account. She said that Officer Jackson asked Slicker to leave the police station because the matter did not involve him. She added that as Slicker left the building, Officer Jackson went out after him and that Officers Fulmer and Kendricks were also outside. Ms. Montgomery testified about the critical encounter in these terms:

Q: Then what happened?

A: That's when Howard was placed on the hood of the patrol car and handcuffed.

Q:  Who placed him on the hood of the car?

A: Officer Jackson.

Q: How did he place him?

A: Grabbed him from behind and pushed on the hood of the car and handcuffed him.

Q: Did Howard struggle?

A: Not that I recall.

**3**

Q: Could you see?

A: Yes

Q: Didn't see him struggle?

A: No.

Q: Then what happened?

A: Howard went limp. He kind of slithered off the hood of the patrol car onto the ground. That's when I saw Officer Jackson grab Howard from behind, back here and what appeared to [sic] he was beating his head on the ground and the other two officers looked as though they were kicking at Howard's ribs or in that general area.....

Q: Did it appear as if his right hand had a clump of Howard's hair in his hand?

A: I couldn't say. I just know he had him like this. I won't say clump. He had his hand in Howard's hair holding it.

Q: And was he using it to strike Howard's head on the pavement?

A: It appeared to me that way, yes.

....

Q: How many times did Officer Jackson strike Howard's head to the ground that you could see?

A: I saw his head hit the ground approximately two to three times.

Q: What were the other officers—what were the other two officers doing at that time?

A: They were to the front of Howard. What appeared to me they were kicking at his rib cage. I was more to the back of Mr. Jackson and to Howard, and I was seeing it from not a clear, as clear a view, but it appeared they were kicking his rib cage.

Q: Both of the officers looked to be kicking?

A: Yes.

Q: They looked to be kicking in the direction of Howard?

A: Yes.

Q: Was Howard handcuffed the whole time?

A: Yes, he was.

Although she said that she never saw the officers beat him on the head, she testified that she knew that they had because she saw the knots on his head that resulted from the beating. Several minutes later, the officers brought Slicker inside and an ambulance was called. According to Montgomery, Slicker's eyes were open but he had a starry-eyed look and was unresponsive. Slicker was taken off on a stretcher to the hospital. At the close of Slicker's case, the officers moved for judgment as a matter of law on the grounds that they were entitled to qualified immunity and, in the alternative, because Slicker failed to present any evidence of damages. The district court found that the officers were not entitled to qualified immunity because Slicker presented enough evidence to raise a question of fact as to whether the officers used excessive force in arresting Slicker. However, the court entered judgment as a matter of law in favor of the officers because it found that Slicker had failed to present any evidence in support of his claim for damages. Specifically, the district court held that under *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), Slicker was required to prove actual injury in order to be entitled to compensatory damages. Moreover, the court observed that under *Memphis Community School District v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986), compensatory damages may not be awarded based on the "abstract value" or "importance" of constitutional rights. Finally, the court noted that punitive damages may be awarded only where a plaintiff shows that there are aggravating circumstances such as reckless indifference, ill will, or malice. The district court concluded that because Slicker did not present any evidence that he suffered a monetary loss in the form of "medical bills," "missed work," or "lost wages," and because he did not present any evidence of aggravating circumstances permitting the award of punitive damages, the officers were entitled to judgment as a matter of law.

## II.

We review *de novo* a district court's grant of judgment as a matter of law under Fed.R.Civ.P. 50, applying the same standards as the district court. *Morris v. Crow,* 117 F.3d 449, 455 (11th Cir.1997). In evaluating a defendant's Rule 50 motion, made at the close of the plaintiff's case, we consider all of the

evidence in a light most favorable to the plaintiff and grant the plaintiff the benefit of all reasonable inferences. We may affirm a judgment as a matter of law only if the facts and inferences " 'point so overwhelmingly in favor of the movant ... that reasonable people could not arrive at a contrary verdict.' " *Bogle v. Orange County Board of County Commissioners,* 162 F.3d 653, 656 (11th Cir.1998)(quoting *Richardson v. Leeds Police Dep't,* 71 F.3d 801, 805 (11th Cir.1995)).

In finding that Slicker was required to present evidence of monetary loss in the form of medical bills, missed work, or lost income, we think the district court misapprehended the "actual injury" requirement set forth in *Carey v. Piphus* and *Memphis Community School District v. Stachura.* In both of these cases the Supreme Court held that compensatory damages under § 1983 may be awarded only based on *actual injuries* caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated. *Carey,* 435 U.S. at 264, 98 S.Ct. at 1052, *Stachura,* 477 U.S. at 309-10, 106 S.Ct. at 2544. The Court did not hold, however, that a § 1983 plaintiff can only satisfy the "actual injury" requirement through evidence of *direct* monetary loss. In fact, the Court specifically found that compensatory damages may include more than out-of-pocket loss and other monetary harms. *Carey,* 435 U.S. at 264, 98 S.Ct. at 1052; *Stachura,* 477 U.S. at 307, 106 S.Ct. at 2543. Moreover, the Supreme Court has held that in the absence of actual injury entitling the plaintiff to compensatory damages, a § 1983 plaintiff whose constitutional rights are violated by the defendant is entitled to nominal damages. *Carey,* 435 U.S. at 266-67, 98 S.Ct. at 1054, *Stachura,* 477 U.S. at 308, n. 11, 106 S.Ct. at 2543, n. 11.

We explicate the facts and holdings surrounding *Carey* and *Stachura* to illustrate the point. *Carey* involved two consolidated suits by students seeking damages and other relief against school board members who allegedly violated their procedural due process rights. One of the students had been suspended for smoking marijuana on school property and the other was suspended for violating a school rule prohibiting male students from wearing earrings. The district court held that the students were not entitled to damages because the students failed to offer any evidence "to quantify their damages, and the record is completely

**6**

devoid of any evidence which could even form the basis of a speculative inference measuring the extent of their injuries." *Carey,* 435 U.S. at 251-52, 98 S.Ct. at 1046. On appeal, the Seventh Circuit reversed, holding that even if the suspensions were ultimately justified, the plaintiffs would be entitled to recover substantial nonpunitive damages for the denial of procedural due process, even though they failed to present proof of actual injury.

The Supreme Court reversed the Circuit Court, holding that a plaintiff alleging that his procedural due process rights were violated is only entitled to compensatory damages based on *actual injury* caused by the defendant and that damages cannot be presumed based on the inherent value of the right that was violated. The Court explained that the basic purpose of § 1983 damages is "to compensate persons for injuries that are caused by the deprivation of constitutional rights" and that our conception of damages drawn from tort law is often helpful in awarding damages in § 1983 cases. *Carey,* 435 U.S. at 253-54, 98 S.Ct. at 1047. It rejected the plaintiffs' argument that because the denial of a "feeling of just treatment" inherently gives rise to mental and emotional distress, they should not have to show actual damages. *Id.* at 260-61, 98 S.Ct. at 1051. The Court noted, however, that damages may be based on demonstrable mental and emotional distress resulting from the deprivation of due process. *Id.* at 264, 98 S.Ct. at 1052. Finally, the Supreme Court found that in the absence of evidence of actual injury, the plaintiffs were entitled to nominal damages. 435 U.S. at 266-67, 98 S.Ct. at 1053-54.

In *Stachura,* a tenured seventh-grade school teacher brought suit under § 1983 against the school district alleging that his First and Fourteenth Amendment rights were violated when he was suspended for teaching a unit on human reproduction. At the close of trial, the district court instructed the jury that if it found the defendants liable, it should award sufficient damages to compensate Stachura for his injuries and that it could also award punitive damages. In addition, the court charged that damages could be awarded based on the value or importance of the constitutional rights that were violated. The Supreme Court held that the district court's instruction was erroneous under the rule it had set forth in *Carey* that § 1983 damages

**7**

should be based on *actual* injuries suffered and that the abstract value of a constitutional right may not form the basis for § 1983 damages. *Stachura,* 477 U.S. at 310, 106 S.Ct. at 2544-45. The Court explained that if juries were allowed to award damages based on the "value" of constitutional rights, "[s]uch damages would be too uncertain to be of any great value to plaintiffs, and would inject caprice into determinations of damages in § 1983 cases." *Stachura,* 477 U.S. at 310, 106 S.Ct. at 2544-45.

*Carey* and *Stachura* plainly require that compensatory damages in a § 1983 suit be based on actual injury caused by the defendant rather than on the "abstract value" of the constitutional rights that may have been violated. Simply put, this means that if Slicker prevails on his claim that the officers violated his constitutional rights, he may receive compensatory damages only for actual injuries that were caused by the defendants' illegal conduct and not based on the abstract value of his right under the Fourth and Fourteenth Amendments to be free from the use of excessive force. Contrary to the district court's order, however, neither *Carey* nor *Stachura* limits proof of actual injury, and compensatory damages based on actual injury, to such things as medical expenses, missed work, and lost income. Instead, the Supreme Court expressly recognized that compensatory damages may be awarded once actual injury is shown despite the fact that the monetary value of the injury is difficult to calculate. *Stachura,* 477 U.S. at 307, 106 S.Ct. at 2543.

Indeed, it is by now well settled that compensatory damages may be awarded based on physical pain and suffering caused by a defendant's use of excessive force, apart from any damages based on monetary loss. *See Atkins v. New York City,* 143 F.3d 100, 104 (2d Cir.1998)(holding that "[a] beating severe enough to leave marks is sufficient proof of a compensable injury."); *Haywood v. Koehler,* 78 F.3d 101, 105 n. 2 (2d Cir.1996)(holding that if prisoner was assaulted in his cell in an excessive use of force, such an assault could warrant some compensatory damages, at least for pain and suffering, even if no laceration or other observable injuries resulted). Slicker presented evidence, if credited, that he was kicked in the ribs and beaten on his head by the officers, that he received two knots on his head, was knocked unconscious, and sought medical

**8**

attention as a result of excessive force. From this evidence, a jury *could* have awarded Slicker compensatory damages for pain and suffering without proof of medical bills, missed work, or lost income.

In addition to damages based on monetary loss or physical pain and suffering, under the law a § 1983 plaintiff also may be awarded compensatory damages based on demonstrated mental and emotional distress, impairment of reputation, and personal humiliation. *See Carey,* 435 U.S. at 264, 98 S.Ct. at 1052; *Stachura,* 477 U.S. at 307, 106 S.Ct. at 2543. *See also, Wright v. Sheppard,* 919 F.2d 665, 669 (11th Cir.1990)(holding that non-physical injuries such as humiliation, emotional distress, and mental anguish and suffering are all within the ambit of § 1983 compensatory damages); *O'Neill v. Krzeminski,* 839 F.2d 9, 13 (2d Cir.1988)(holding that § 1983 plaintiff alleging excessive force by a police officer was entitled to full compensation for his physical and emotional pain, in addition to any lost wages, suffered as a result of the defendant's conduct). We think Slicker was entitled to present evidence and seek damages based on any monetary loss, as well as any physical pain and suffering or mental and emotional anguish that he may have incurred as a result of the officers' alleged misconduct. The district court therefore erred in entering judgment in favor of the officers simply on the grounds that Slicker failed to present evidence of medical expenses, missed work, or lost income.

We add, however, that even if Slicker were unable to demonstrate that he suffered any actual injury, under controlling case law the district court erred in not allowing Slicker to seek nominal damages. We have held unambiguously that a plaintiff whose constitutional rights are violated is entitled to nominal damages even if he suffered no compensable injury. *See Kelly v. Curtis,* 21 F.3d 1544, 1557 (11th Cir.1994)(holding that a § 1983 plaintiff alleging false arrest, malicious prosecution, and illegal detention is entitled to receive nominal damages if he demonstrates that the defendants violated his constitutional rights even if he is unable to prove that he suffered a specific, actual injury as a result of the defendants' conduct); *see also Carey,* 435 U.S. at 266, 98 S.Ct. at 1054.

Although we have never addressed the appropriateness of nominal damages in the context of an excessive force claim, we agree with the reasoning of our sister circuits which have held that a § 1983 plaintiff alleging excessive use of force is entitled to nominal damages even if he fails to present evidence of compensable injury. *See e.g., Gibeau v. Nellis,* 18 F.3d 107, 110 (2d Cir.1994); *Butler v. Dowd,* 979 F.2d 661, 669 (8th Cir.1992)(en banc); *Briggs v. Marshall,* 93 F.3d 355, 360 (7th Cir.1996). These cases acknowledge that the typical § 1983 plaintiff alleging excessive force may be entitled to compensatory damages. They identify, however, several circumstances under which a § 1983 plaintiff alleging excessive use of force may be entitled to receive only nominal damages.

First, the jury may award nominal damages where there is evidence that both justifiable and unjustifiable force might have been used and the injury may have resulted from the use of justifiable force. *See Gibeau v. Nellis,* 18 F.3d 107, 110-11 (2d Cir.1994)(holding that the district court erred in not instructing jury that it must award nominal damages if it were to find that the plaintiff's Eighth Amendment rights were violated by the defendants' use of excessive force but that plaintiff did not prove his injuries were proximately caused by the excessive force). Second, nominal damages may be appropriate where a jury reasonably concludes that the plaintiff's evidence of injury is not credible. *See Butler v. Dowd,* 979 F.2d 661, 669 (8th Cir.1992)(en banc)(holding that award of nominal damages to inmates who brought suit against prison officials for permitting them to be raped by other inmates in violation of their Eighth Amendment rights was not inadequate as a matter of law because the jury could have believed that plaintiffs' actions were the cause in fact of most of their injuries or the jury could have disbelieved the plaintiffs' testimony regarding the extent of their injuries). Finally, an award of nominal damages may be appropriate when the plaintiff's injuries have no monetary value or when they are not quantifiable with reasonable certainty. *See Briggs v. Marshall,* 93 F.3d 355, 360 (7th Cir.1996)(holding that award of nominal damages was not error where nearly all of the damages evidence consisted of the plaintiffs' testimony, the plaintiffs failed to produce medical testimony regarding their physical injuries, and there was evidence in the record from which the jury could have

**10**

disbelieved the extent of the plaintiffs' physical and emotional injuries). Therefore, if on remand the jury does indeed find that the officers used excessive force in violation of Slicker's constitutional rights but that he failed to present any evidence of a compensable injury, Slicker must be awarded nominal damages.

The officers argue, however, that even if the district court erred in granting their motion for judgment as a matter of law on the grounds that Slicker failed to present any evidence of damages, the judgment still should be affirmed because they are entitled to qualified immunity since Slicker failed to present any evidence that the officers' conduct was not objectively reasonable under the circumstances. Notably, the district court held that the officers were not entitled to qualified immunity because Slicker presented enough evidence to raise a question of fact as to whether the officers used excessive force. The district court did not err in finding that the officers were not entitled to qualified immunity.

"Qualified immunity protects from civil liability government officials who perform discretionary functions if the conduct of the officials does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Nolin v. Isbell,* 207 F.3d 1253, 1255 (11th Cir.2000)(quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Moreover, in an excessive force case, "qualified immunity applies unless application of the standard would inevitably lead every reasonable officer ... to conclude the force was unlawful." *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1559 (11th Cir.1993), modified 14 F.3d 583 (11th Cir.1994). In determining whether an officer's use of force was objectively reasonable, thereby entitling the officer to qualified immunity, we consider a variety of factors including "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." *Moore v. Gwinnett County,* 967 F.2d 1495, 1498 (11th Cir.1992)(quoting *Leslie v. Ingram,* 786 F.2d 1533, 1536 (11th Cir.1986)). A court should also consider "the severity of the crime, whether the suspect pose[d] an immediate threat, and whether the suspect [was] resisting or fleeing." *Post,* 7 F.3d at 1559 (citation omitted). We also have had occasion

**11**

to observe recently that "this Circuit has established the principle that the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin,* 207 F.3d at 1257.

As we've noted, Slicker presented two witnesses, himself and Patricia Snead Montgomery, who provided ample testimony, if credited, in support of Slicker's claim that the police used excessive force. Ms. Montgomery testified that once Slicker was arrested and handcuffed, he did not struggle or resist the officers in any way. In addition, she testified that it appeared to her that the officers kicked him in the ribs and beat his head on the ground. And Slicker testified, unambiguously, that after he was handcuffed, the officers repeatedly hit his head on the pavement, kicked him, and knocked him unconscious. If credited by the fact finder, this evidence suggests the officers used excessive force in beating Slicker even though he was handcuffed and did not resist, attempt to flee, or struggle with the officers in any way. This evidential foundation is sufficient to raise a question of fact as to whether the officers' actions constituted excessive and not de minimis force. On this record, we think the district court properly concluded that the officers were not entitled to qualified immunity.

In sum, if the jury were to find that the officers did indeed use excessive force, Slicker may be entitled to compensatory damages based on any injuries he incurred as a result of their misconduct, including damages based on monetary loss, physical pain and suffering, or demonstrable mental and emotional distress. Moreover, if the jury were to find excessive force but that Slicker suffered no compensable damages, Slicker still would be entitled to an award of nominal damages.

REVERSED AND REMANDED.